UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRANCOIS XAVIER OLIVIER BARRE,<br><br>Petitioner,<br><br>v.<br><br>CHRISTOPHER LAROSE, Warden of Otay Mesa Detention Center, et al.,<br><br>Respondents. | Case No.:  26-CV-3088 JAO (VET)<br><br>**ORDER GRANTING IN PART PETITION FOR WRIT OF HABEAS CORPUS**<br><br>(ECF No. 1) |

Before the Court is Francois Xavier Olivier Barre's ("Petitioner") Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 (ECF No. 1) challenging the legality of his ongoing immigration detention.  Also before the Court is Respondents Christopher LaRose's (Warden of Otay Mesa Detention Center), Markwayne Mullin's (Secretary of the U.S. Department of Homeland Security ("DHS")), Todd M. Lyon's (Director, Immigration and Customs Enforcement ("ICE")), Patrick Divver's (Field Office Director ICE, Enforcement and Removal Operations San Diego Field Office) (collectively, "Respondents") Return to Habeas Petition (ECF No. 4), and Petitioner's Traverse ("Traverse," ECF No. 5).

For the following reasons, the Court **GRANTS IN PART** the Petition for Writ of Habeas Corpus.

## BACKGROUND

Petitioner is a citizen of France who entered the United States on November 11, 2021 under the Visa Waiver Program ("VWP"), which allows visitors from certain countries entry into the United States for a period of up to 90 days. *See* ECF No. 1 ¶¶ 2, 30–31;[1] ECF No. 1-2 at 11; ECF No. 4-2 at 4; *see also* 8 U.S.C. § 1187. Since then, Petitioner has lived in the United States and built a community with his U.S. Citizen wife, Jacqueline Coulon. *See* ECF No. 1 ¶ 32; ECF No. 1-2 at 12 (marriage certificate).

On April 24, 2026, Petitioner was driving near Camp Pendleton trying to go to Starbucks when he encountered ICE/ERO officers. *See* ECF No. 4-2 at 3. The officers examined Petitioner's French passport and ran an immigration record check that revealed Petitioner had not left the United States at the end of his 90-day VWP period. *See id.* He was arrested that day for overstaying his visa and has remained in detention since. *See id*; *see also* ECF No. 1-2 at 71. Petitioner does not have any criminal record. *See* ECF No. 4-2 at 3–4. Several days after Petitioner's arrest, his wife filed an I-130 Petition for Alien Relative, which remains pending. *See* ECF No. 1-2 at 14. ECF No. 1 ¶ 33.

Being a VWP entrant, Petitioner is subject to a different set of procedures than many people in removal proceedings. To be admitted under the VWP, applicants must waive "any right . . . to contest, other than on the basis of an application for asylum, any action for removal of the alien." 8 U.S.C. § 1187(b)(2). This means that those who enter under the VWP and overstay their 90-day period are "not entitled to full removal proceedings under Immigration and Nationality Act § 240." *Nicusor-Remus v. Sessions*,

---

[1] There are several errors in the Petition that appear to relate to another person's petition for writ of habeas corpus. *See, e.g.*, ECF No 1 ¶ 60 ("[I]n approximately May 2025, Respondents' agents arrested Petitioner at San Diego Immigration Court, depriving her of her liberty interest[.]"). Nevertheless, based on the documentary evidence the parties submitted, the Court can discern the relevant facts as they pertain to the instant Petition.

26-CV-3088 JAO (VET)

902 F.3d 895, 897 (9th Cir. 2018).  Instead, "[a] VWP entrant's removability 'shall be determined by the district director [of DHS] who has jurisdiction over the place where the alien is found, and shall be effected without referral of the alien to an immigration judge for a determination of deportability' unless the alien applies for asylum." *Bingham v. Holder*, 637 F.3d 1040, 1042 (2011) (quoting 8 C.F.R. § 217.4(b)(1)).  If the VWP entrant seeks asylum, they are referred to an IJ for asylum-only proceedings.  *See Nicusor-Remus*, 902 F.3d at 898; 8 C.F.R. § 217.4(b)(1).  Although often referred to as "asylum-only proceedings," VWP entrants may also seek withholding of removal and protection under the Convention Against Torture before the IJ.  *See Bao Tai Nian v. Holder*, 683 F.3d 1227, 1228 (9th Cir. 2012).

After his arrest and while in custody, Petitioner requested asylum and/or withholding of removal under the Convention Against Torture.  *See* ECF No. 4-1 at 2.  DHS thus referred Petitioner to an IJ for asylum-only proceedings.  *See id.*  Before the IJ, Petitioner requested a bond hearing, *see* ECF No. 1 ¶ 34; ECF No. 1-2 at 5–6, but the IJ declined to rule on the merits of the motion and instead concluded that he lacked jurisdiction to modify Petitioner's custody because Petitioner was in asylum-only proceedings, *see* ECF No. 1-2 at 55 (citing *Matter of A-W-*, 25 I&N Dec. 45 (BIA 2009)).  Since Petitioner's asylum-only proceedings remain pending, he is not subject to a final order of removal.  *See Nicusor-Remus*, 902 at 898–99; *see also AMM v. Thompson*, 2025 WL 3296315, at *2 (W.D. Tex. Nov. 26, 2025) (collecting cases)

## LEGAL STANDARD

A federal prisoner challenging the execution of his or her sentence, rather than the legality of the sentence itself, may file a petition for writ of habeas corpus in the district of his confinement pursuant to 28 U.S.C. § 2241.  *See* 28 U.S.C. § 2241(a).  The sole judicial body able to review challenges to final orders of deportation, exclusion, or removal is the court of appeals.  *See generally* 8 U.S.C. § 1252; *see also Alvarez–Barajas v. Gonzales*, 418 F.3d 1050, 1052 (9th Cir. 2005) (citing REAL ID Act, Pub. L. No. 109-13, 119 Stat. 231, § 106(a)).  However, for claims challenging ancillary or collateral

3

issues arising independently from the removal process—for example, a claim of indefinite detention—federal habeas corpus jurisdiction remains in the district court. *Nadarajah v. Gonzales*, 443 F.3d 1069, 1076 (9th Cir. 2006), *abrogated on other grounds by Jennings v. Rodriguez*, 583 U.S. 281 (2018); *Alvarez v. Sessions*, 338 F. Supp. 3d 1042, 1048–49 (N.D. Cal. 2018) (citations omitted).

## DISCUSSION

Petitioner contends that he should be subject to discretionary detention under § 1226(a), rather than the mandatory detention provision of § 1225(b)(2), and that his failure to receive a bond hearing violates due process and/or the Immigration and Nationality Act ("INA"). *See* ECF No. 1 ¶¶ 65, 67. Without addressing Petitioner's arguments or otherwise defending Petitioner's detention, Respondents assert that Petitioner is in fact detained under § 1187, the VWP statute itself. The Court concludes—in line with the majority of other courts that have considered the matter—that § 1187 does not provide a basis for Petitioner's detention, and that Petitioner is therefore subject to § 1226(a).

As other courts have explained, § 1187 does not provide an independent basis for detention for the simple reason that the statute "does not address detention of noncitizens who violate the VWP," nor "refer to detention at all." *See, e.g.*, *Quispe v. Chestnut*, 2026 WL 654577, at *3 (E.D. Cal. Mar. 9, 2026); *Molina v. Soto*, 2025 WL 3281820, at *2–3 (D. N.J. Nov. 25, 2025); *see also Lee v. Warden, Buffalo Fed. Detention Facility*, 2026 WL 1413151, at *3–4 (W.D.N.Y. May 20, 2026). Based on this, courts have rejected the BIA's interpretation of § 1187 in *Matter of A-W-*, and concluded that "the VWP does not have its own detention provision." *Gjergj v. Edwards*, 2019 WL 1254561, at *2 (D.N.J. Mar. 18, 2019); *see Neziri v. Johnson*, 187 F. Supp. 3d 211, 213 (D. Mass. 2016) ("The BIA offers no explanation, however, as to why the Secretary of Homeland Security cannot delegate any [bond-setting] authority to the Immigration Judge under 8 U.S.C. § 1226(a) or where in 8 U.S.C. § 1187(c)(2)(E) the BIA finds the Secretary of Homeland Security's authority to detain aliens.")); *Szentkiralyi v. Ahrendt*, 2017 WL 3477739, at

26-CV-3088 JAO (VET)

*4–5 (D.N.J. Aug. 14, 2017). Thus, the detention of a VWP entrant "must instead arise from one of the other statutory provisions expressly covering aliens subject to detention during their removal proceedings." *Gjergj*, 2019 WL 1254561, at *2.

The Court agrees with the foregoing and concludes that the only possible basis for Petitioner's detention is § 1226(a) because he has been in the country for several years, ruling out § 1225(b)(2). *See, e.g., Amaya v. Noem*, 2025 WL 3182998, at *2 (S.D. Cal. Nov. 13, 2025). Moreover, Respondents do not assert that Petitioner has any convictions that would subject him to detention under 1226(c). Because Petitioner is subject to § 1226(a), he is entitled to a bond hearing. *See Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1202 (9th Cir. 2022) ("Section 1226(a) and its implementing regulations provide extensive procedural protections that are unavailable under other detention provisions, including . . . an initial bond hearing before a neutral decisionmaker[.]"). The Court thus GRANTS in PART the Petition.[2]

## CONCLUSION

Based on the foregoing, the Court **GRANTS IN PART and DENIES IN PART** the Petition for Writ of Habeas Corpus (ECF No. 1), and **ORDERS** Respondents to provide Petitioner with an individualized bond hearing within ten (10) days before a neutral immigration judge in which the government bears the burden of establishing by clear and convincing evidence that Petitioner is a danger to the community or a flight risk if released. If no hearing occurs within fourteen days of this Order, Petitioner shall be released from Respondents' custody. The Court **DENIES** Petitioner's request for release from detention without prejudice but notes that if Respondents do not give Petitioner an adequate bond hearing, the Court may order release in the future. *See, e.g., Singh v.*

---

[2] The Court acknowledges that some cases in from the Eastern District of California have ordered immediate release of petitioners under similar circumstances to those here. *See Quispe v. Becerra*, 2025 WL 3774570, at *8 (E.D. Cal. Dec. 31, 2025); *Wei v. Chestnut*, 2026 WL 412203, at *2 (E.D. Cal. Feb. 13, 2026). Still, it appears the majority of courts order a bond hearing rather than provide immediate release. *See, e.g., Molina*, 2025 WL 3281820, at *4.

26-CV-3088 JAO (VET)

*LaRose*, 2026 WL 1387428, at \*5–6 (May 18, 2026); *Perez Velasquez v. Bondi*, 2026 WL 1042479, at \*6–7 (S.D. Cal. Apr. 16, 2026).  The Parties **SHALL** file a Joint Status Report by June 10, 2026, informing the Court of the outcome of the hearing.

     **IT IS SO ORDERED.**

Dated:  May 26, 2026



Jill A. Otake
United States District Judge

26-CV-3088 JAO (VET)